IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
SEP 16 2026
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:26-cr-83 |
| | ) | |
| HAYLEY NICOLE ATWOOD, | ) | 18 U.S.C. § 1343 |
| | ) | Wire Fraud |
| Defendant. | ) | (Count 1) |
| | ) | |
| | ) | Criminal Forfeiture |
| | ) | 18 U.S.C. § 981(a)(1)(C) |

## CRIMINAL INFORMATION

THE UNITED STATES CHARGES THAT:

## GENERAL ALLEGATIONS

1. On or about March 6, 2015, the defendant, HAYLEY NICOLE ATWOOD, received her basic esthetician license with the Virginia Department of Professional and Occupational Regulation. Basic estheticians are licensed skincare professionals who are authorized under Virginia to perform non-invasive beauty treatments like facials, waxing, exfoliation, and makeup applications. Under Virginia law, basic estheticians are prohibited from performing medical procedures.

2. ATWOOD has never held a license to be a master esthetician. Under Virginia law, master estheticians can perform more advanced procedures such as chemical peels and microdermabrasion. Master estheticians are also permitted under Virginia law to perform medical procedures including laser hair removal, but *only* if they have been delegated to do the same by a properly trained licensed physician or physician assistant who has ensured the person performing laser removal is properly trained and supervised. Laser tattoo removal is considered

surgery under Virginia law and may only be performed by a licensed physician or other specified medical professional, and my *not* be delegated to others such as estheticians.

3. Nonetheless, beginning in at least 2017, ATWOOD consistently falsely purported to be a master esthetician to colleagues and potential customers, including on her social media accounts. For example, in January 2018, ATWOOD responded to a customer inquiry stating "I can help with any skincare questions I'm a master esthetician of 8 years." And as of July 2024, she described herself on her personal Facebook profile as a "Master Esthetician & Laser Technician."

4. On or about September 18, 2018, ATWOOD registered her company Skin Goals Local with the Virginia State Corporation Commission ("SCC"), which she owned and operated as an esthetics spa in Chesapeake, Virginia, in the Eastern District of Virginia. The SCC registration for Skin Goals Local was cancelled on or about December 31, 2022. ATWOOD also owned and operated Skin Goals Local in Elizabeth City, North Carolina, during this time frame, but closed it after an investigation by the North Carolina Medical Board concerning a failure to have a licensed medical director. On or about November 29, 2022, ATWOOD registered her company Barely Nude LLC with the SCC, which she owned and operated as an esthetics spa in the same location as Skin Goals Local in Chesapeake, Virginia.

5. At her businesses, ATWOOD accepted payment from her customers on a platform called Fresha, which describes itself as "the leading marketplace platform for beauty and wellness trusted by millions of consumers and businesses worldwide." Fresha is an international company with headquarters in the United Kingdom, and in the United States operates as Fresha.com USA, Inc., with offices in New York City, New York. Payments made by ATWOOD's customers in Chesapeake, Virginia, via Fresha were transmitted via the Internet and were wires in interstate

and foreign commerce.

6. On or about March 10, 2021, and April 28, 2021, ATWOOD purchased two Spectrum Laser devices from Rohrer Aesthetics, LLC in Alabama for her esthetics spas in Elizabeth City, North Carolina and Chesapeake, Virginia, respectively. The Spectrum Laser is a multi-functional platform that combines 5 powerful modalities for a wide range of aesthetic treatments, including but not limited to laser hair removal and laser tattoo removal. The Food and Drug Administration ("FDA") cleared laser components within the Spectrum laser for use in dermatology and general surgery in and around October 2003 and in and around July 2019. The Spectrum Lasers cost approximately $59,500 each.

7. Under the Federal Food, Drug, and Cosmetic Act ("FDCA") and corresponding federal regulations, ATWOOD's Spectrum Laser devices were classified as a Class II medical prescription devices. A prescription device is a device which, because of its potential for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe to use except under the supervision of a practitioner licensed by law to direct the use of the device. 21 C.F.R. § 801.109.

8. Under the FDCA, a device is misbranded unless its labeling bears "adequate directions for use." 21 U.S.C. § 352(f). "Adequate directions for use" is defined as directions under which the layman can use a drug safely and for the purposes for which it is intended. 21 C.F.R. § 801.5.

9. Prescription devices by definition cannot safely be used by a layman and they therefore must qualify for an exemption to this labeling requirement in order to be distributed in interstate commerce. The exemption for prescription devices, set out in 21 C.F.R. § 801.109, requires that all its conditions be met. These include that the device is always: (1) in the

possession of a person, or his agents or employees, regularly and lawfully engaged in the manufacture, storage, or wholesale or retail distribution of the device; or (2) in the possession of a practitioner, such as physicians, dentists, and veterinarians, licensed by law to use or order the use of the device; and the device must be sold only to or on the prescription or other order of such practitioner for use in the course of his professional practice.

10. The Spectrum Laser's status as a prescription medical device means that its use or sale in a manner not in conformance with applicable regulations (*e.g.*, to someone who was not allowed to possess it or for use without valid prescriptions or other orders from a licensed medical practitioner) constitutes acts that cause it to become misbranded. 21 C.F.R. § 801.109; 21 U.S.C. § 331(k).

11. If a shipment or delivery, or any part thereof, of a device which is exempt under the regulations is made to a person in whose possession the article is not exempt, or is made for any purpose other than those specified, such exemption shall expire with respect to such shipment or delivery at the beginning of that shipment or delivery. The causing of an exemption to expire shall be considered an act which results in such device being misbranded. 21 C.F.R. § 801.127.

12. ATWOOD hired the first medical director for her business, Dr. A.H., on or about December 28, 2019, who remained the medical director through in and around July 2021. She hired the second medical director, Dr. S.N., in and around July 2021, who remained the medical director through in and around November 2022. Neither medical director ever supervised or authorized ATWOOD or anyone at her business to perform laser tattoo removal. Dr. A.H. only supervised Botox treatments and not laser hair removal. Dr. S.N. supervised laser hair removal but never evaluated ATWOOD or her staff, or saw her patients.

13. ATWOOD had no medical director, and thus was not under the supervision of any

licensed medical practitioner, from in and around September 2019 through December 2019, and November 2022 until she stopped operating her businesses.

14. Nonetheless, ATWOOD consistently advertised, offered and performed laser tattoo removal. She also advertised, offered and performed laser hair removal while she had no medical director and while her medical director was Dr. A.H. She also consistently purported that her office was fully qualified to perform these services. For example, on or about July 15, 2021, she posted on a social media account for her business that "My entire staff is licensed, trained and certified in all treatments we offer." On or about January 11, 2023, she posted on a social media account for her business that "I've been in the industry since 2013. I've worked under numerous doctors/nurses and have put myself through many extended educations courses. I've taught nurses, doctors, other estheticians and even schools. I KNOW WHAT IM DOING."

15. From in and around December 2020, when ATWOOD began using Fresha, to in and around September 2023 when she stopped using Fresha, ATWOOD's businesses received approximately $358,566 for all laser services via Fresha. In the same timeframe, her business performed approximately 287 laser tattoo removal procedures for which her businesses received approximately $40,320 via Fresha.

<u>COUNT ONE</u>
(Wire Fraud)

16. The preceding paragraphs of this Information are reincorporated as if realleged herein.

17. From in and around September 2018 through in and around September 2023, in the Eastern District of Virginia and elsewhere, defendant HAYLEY NICOLE ATWOOD, with the intent to defraud, devised and intended to devise, a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and

promises, which scheme and artifice to defraud and for obtaining money was in substance as follows:

18. The object of the scheme and artifice was to fraudulently obtain funds to which she was not entitled from her clients, by accepting their payment for laser hair removal and laser tattoo removal performed by her or others at her direction, while she was not legally authorized to perform or offer such services.

19. It was a part of the scheme that ATWOOD used social media platforms to advertise laser hair removal and laser tattoo removal services and purport to be fully qualified and certified to perform the same.

20. It was further a part of the scheme that ATWOOD falsely purported to be a master esthetician when she was not.

21. It was further a part of the scheme that ATWOOD accepted payments for these services via the Fresha platform.

22. On or about March 8, 2023, in Chesapeake, Virginia, in the Eastern District of Virginia, for the purpose of executing such scheme or artifice, defendant transmitted and caused to be transmitted by wire in interstate and foreign commerce writings, signs, signals, pictures, and sounds, namely a payment via Fresha for client A.M. for a laser tattoo removal procedure in the amount of $100.

(In violation of Title 18, United States Code, Section 1343.)

**FORFEITURE**

Pursuant to Rule 32.2(a) of Fed. R. Crim. P., defendant, HAYLEY NICOLE ATWOOD, is hereby notified that upon conviction of the offense alleged in Count One of this Criminal Information, she shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

The property subject to forfeiture includes, but is not limited to, a monetary judgment representing the gross proceeds of the fraud scheme alleged in Count One and which shall be reduced to a money judgment against the defendant in favor of the United States.

If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets, pursuant to 21 U.S.C § 853(p).

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c)).

TODD W. BLANCHE
ATTORNEY GENERAL

THEOPHANI K. STAMOS
FIRST ASSISTANT U.S. ATTORNEY

By: ______________________

Kristen S. Taylor
E. Rebecca Gantt
Assistant U.S. Attorneys
Counsel for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510-1671
Phone: (757) 441-6331
Fax: (757) 441-6689
Email: kristen.taylor2@usdoj.gov